**In the Matter of the Petition of Alva Steamship Co., Ltd., owner of the M/T ALVA CAPE, for exoneration from or limitation of liability.**

**ALVA STEAMSHIP CO., Ltd., Petitioner-Third-Party Plaintiff-Appellant,**

v.

**The CITY OF NEW YORK, Third-Party Defendant-Appellee,**

and

**Walter A. Kidde & Co., Inc., et al., Third-Party Defendants.**

**Nos. 30–31, Dockets 32256–32257.**

United States Court of Appeals Second Circuit.

Argued Sept. 10, 1968.

Decided Jan. 7, 1969.

See also, D.C., 262 F.Supp. 328.

James M. Estabrook, New York City (Haight, Gardner, Poor & Havens, J. Ward O'Neill, MacDonald Deming, Charles S. Haight, Jr., and Stephen S. Gerard, New York City, on the brief), for petitioner-third-party plaintiff-appellant.

Irving Genn, New York City (J. Lee Rankin, Corp. Counsel, and Stanley Buchsbaum, New York City, on the brief), for third-party defendant-appellee.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

This appeal presents the question of whether the City of New York may be held liable in an admiralty suit for damages resulting from a shipboard explosion which occurred in the New York waters of New York Harbor during the execution by a salvor of a negligent order issued by the City's Fire Commissioner. The district court, applying state law in the absence of any conflicting admiralty rule, held that under Section 8 of the New York Court of Claims Act[1] the City was not liable for the consequences of the Commissioner's "discretionary, quasi-judicial" order. Accordingly the Court granted the City's motion for summary judgment under F.R.Civ.P. 56, upon consideration of the pleadings and the affidavits submitted by the parties, and dismissed petitioner Alva Steamship Company's third-party complaint against the City. Since the judgment entered under Rule 54(b) constitutes a final determination of the City's liability Alva's appeal is properly before this court.

We reverse the order of the District Court. While the factual record on this appeal from summary judgment is necessarily incomplete, we hold on the facts as pleaded that the New York Court of Claims Act, § 8, as interpreted by the New York courts, does not bar Alva's cause of action against the City. The cause is remanded for further proceedings not inconsistent with this opinion.

On June 16, 1966, petitioner's ship the M/T Alva Cape was involved in a collision with the steamship Texaco Massachusetts off Bergan Point, New Jersey, in New York Harbor. At the time the Alva Cape was filled with naphtha, an explosive petroleum derivative. As a result of the collision a fire started on an adjacent tug, and soon spread to the Alva Cape. The New York City Fire Department succeeded in extinguishing the blaze, but not before the Alva Cape had suffered substantial damage.

Alva engaged the Merritt-Chapman & Scott Corporation, a third-party defendant not involved in this appeal, to begin salvage operations. The salvor promptly removed one barge load of cargo from the Alva Cape to end the leaking of naphtha from the ship's hold. At this point the Captain of the Port, a Coast Guard officer apparently acting in this instance pursuant to his statutory power under 14 U.S.C. § 91 (1964), ordered the ship removed to a federal explosives an-

---

[1] "The State hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the Supreme Court against individuals or corporations * * *." New York Court of Claims Act, § 8.

chorage in Gravesend Bay, Brooklyn. Upon request the Captain on June 24, 1966 authorized the continued discharge of the Alva Cape's cargo of naphtha in accordance with certain specified safety procedures, which are set out in the margin.[2]

The City Fire Commissioner apparently did not feel that the precautions ordered by the Captain of the Port were sufficient to protect against the danger of further fires or explosions during the discharging process. On June 27, after consultation with his department's Board of Fire Prevention Regulations, but without consulting the Captain so far as appears from the record before us,[3] the Commissioner issued order No. 2464–6 to the Navcot Corporation, agents for Alva. The full order, issued "in the interest of public safety," is set out in the margin.[4] Basically it required that an inert gas be introduced into the Alva Cape's cargo compartments for the pur-

pose of reducing the concentration of naphtha fumes to a level which would not pose a danger of explosion.

Affidavits submitted by petitioner, uncontroverted on this point, state that there were only two inert gases available which could have been used to comply with the Commissioner's order. One, nitrogen, was not suitable for introduction aboard the Alva Cape since the ship's holds were not airtight, and thus were incapable of retaining the lighter-than-air nitrogen. This left carbon dioxide as the only gas with which the ship's compartments could be inerted in accordance with the Commissioner's order. But it is alleged that the Commissioner was negligent in issuing his order because he knew, or in the exercise of reasonable care should have known, that the introduction of carbon dioxide into the Alva was extremely dangerous due to the possible occurrence of static electricity.[5]

2. The following conditions were specified in a letter from the Captain of the Port to Alva's agent on June 24, 1966:

"a. Obtain gas free certificate for main pump room.

b. Perform Hydrostatic Test of 125 lbs. pressure on discharge side of that portion of ship's piping to be used in defueling operation. Remaining interconnecting pipe to be blanked off.

c. Steam to be supplied by Coast Guard certificated, oil fired tug, equipped with an operating stack screening system to prevent any sparks from being discharged.

d. A wooden barge to be provided between the hull of the Alva Cape and oil fired tug to provide spark free fendering and insure reasonable separation between the two.

e. Wind to be from such a direction as to carry any vapors from leaking cargo away from oil fired tug. Operations to cease whenever this condition does not exist.

f. A constant watch to be assigned during all daylight hours, or hours of darkness when pumping operations are being carried out, to prevent accumulation of any significant lack of escaping naphtha on the surface of the water. All such incipient slicks to be effectively emulsified by a suitable means." Appendix to Appellant's brief, pp. 49a-50a.

3. The record indicates that the Commissioner was in contact with the Captain in connection with the original collision and the removal of the Alva Cape to Gravesend Bay, but it does not reveal any communication between them with regard to the Commissioner's order.

4. "In the interest of public safety the Fire Department of the City of New York finds it necessary to order the following safeguards:

Provide that cargo compartments of the tanker Alva Cape shall be inerted below the lower explosive limits by means of an inert gas during the cargo removal operations and so maintained until removal of vessel from the boundaries of the City of New York.

Certifications of the inerting shall be obtained from a Marine Chemist with reports of periodic checks every three hours until removal of the vessel from the boundaries of the City of New York.

     Robert O. Lowery
     Fire Commissioner."
Appendix to Appellant's Brief, p. 42a.

5. A portion of Alva's third party complaint not involved in this appeal alleges that the Walter Kidde Company, which furnished the carbon dioxide to salvor Merritt-Chapman, was also at fault in not warning Alva or its salvor of the extreme danger posed by the planned use of the gas.

In fact during the introduction of carbon dioxide by the salvor an explosion occurred on June 28, 1966, causing four deaths, several personal injuries, and making further salvage of the Alva Cape impossible. It is alleged that evidence exists which establishes that the immediate cause of the explosion was the presence of static electricity produced by the introduction of the gas. On June 30 the Fire Commissioner ordered that no salvage work should be performed aboard the Alva Cape, and on July 3 the ship was towed to the high seas and sunk by gun fire by order of the Coast Guard.

Prior to the explosion Alva on June 21 had filed a petition for exoneration from, or limitation of, liability arising from the original collision with the Texaco Massachusetts and its aftermath. Following the explosion Alva amended this petition and filed a third-party complaint against the City and various parties not involved in this appeal. In its complaint Alva seeks indemnity from the personal injury, death, and cargo claims, totaling approximately $4,000,000, pending against it as a result of the explosion, and also seeks damages of $188,000 for its own property losses.

We disagree with the district court's conclusion that under state court decisions interpreting section 8 of the New York Court of Claims Act the City must prevail on its motion for summary judgment. Because of the view we take of New York law we have no occasion to review the district court's holding that a state law providing for governmental immunity can be applied to defeat an otherwise meritorious admiralty cause of action seeking damages for a maritime tort. Cf. Workman v. City of New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900).

■ Section 8 of the Court of Claims Act, enacted in 1920, provides:

"The State hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations * * *."

While the section waives the defense of sovereign immunity both for the State and its subdivisions, Bernardine v. City of New York, 294 N.Y. 361, 365, 62 N.E. 2d 604, 161 A.L.R. 364 (1945), New York law still holds governmental units immune from suit when necessary to prevent "the incursion of courts and juries" into the administration of municipal affairs by state and local officials. Weiss v. Fote, 7 N.Y.2d 579, 585, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960). Phrases such as "quasi-judicial" and "uniquely governmental," sometimes used to describe the types of acts for which the government cannot be sued, are not helpful in deciding specific cases. Inevitably there must be a case by case analysis of the character of each governmental act alleged as the basis of liability and an assessment of the appropriateness of subjecting the government to suit under the particular circumstances at bar. We must attempt to analogize the facts before us to the closest New York precedents under § 8, recognizing the unavoidable hazards involved in undertaking to predict the result which the state courts would reach in this case.

The closest state precedent is Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), which the district court properly emphasized but we believe incorrectly interpreted. The complaint alleged that an automobile accident had occurred in an intersection because the City of Buffalo had negligently designed a traffic signal light so that it provided an insufficient "clearance interval" between the stop and go signals. The evidence, however, showed that the traffic light pattern had been designed and installed by the City's Board of Safety only after a detailed study of traffic conditions at the particular intersection. There had been no other accident at the intersection in the three year period during which the light had been in operation.

On this record Judge Fuld, writing for the Court of Appeals, held that:

"[T]here is nothing [in the record] to suggest that [the Board of Safety's] decision was either arbitrary or unreasonable. To state the matter briefly, absent some indication that due care was not exercised in the preparation of the design or that no reasonable official could have adopted it—and there is no indication of either here—we perceive no basis for preferring the jury verdict, as to the reasonableness of the 'clearance interval', to that of the legally authorized body which made the determination in the first instance." Id. at 586, 200 N.Y.S.2d at 413, 167 N.E.2d at 66.

\* \* \* \* \* \*

"[L]iability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evoked without adequate study or lacked reasonable basis." Id. at 589, 200 N.Y.S.2d at 416, 167 N.E.2d at 68.

The City relies heavily on Weiss v. Fote as establishing its immunity from suit under the facts before us. But we have no difficulty reading Alva's third party complaint, together with its affidavit submitted in opposition to the City's motion to dismiss, as sufficiently alleging within the spirit of Weiss v. Fote that the Fire Commissioner's order lacked a "reasonable basis" and that it was issued without the exercise of "due care." Alva alleges that the order required the use of carbon dioxide to inert the ship, which was filled with naphtha, despite the fact that the Commissioner knew or reasonably should have known that the attempt to introduce carbon dioxide was "extremely dangerous," and had caused several explosions under similar circumstances in the past. A finding of a lack of due care might also be supported by the Commissioner's failure to consult the Captain of the Port or outside experts in this field before issuing his order, although proof that he consulted with his Board of Fire Prevention Regulations, assuming that this body possessed expertise in this area, would of course be relevant in rebuttal. Whatever the likelihood that the City ultimately will prevail upon a full exploration of the facts surrounding the explosion, this does not entitle it to summary judgment when, from the pleadings, it appears that a genuine issue of fact is presented. Here that issue is whether the Fire Commissioner's order was issued without due care or without a reasonable basis.

The district court, in construing Weiss v. Fote to compel the granting of the City's motion for summary judgment, quoted the following passage from Judge Fuld's opinion:

"To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts." 7 N.Y.2d at 585–586, 200 N.Y.S.2d at 413, 167 N.E.2d at 66.

This passage is susceptible to the broad reading which the district court gave to it, but only when the remainder of the opinion is ignored. The Court of Appeals clearly did not mean to suggest that the City was rendered automatically immune by virtue of having entrusted the design of traffic lights to "experts," for in the portions of the *Weiss* opinion quoted earlier the Court explicitly stated that the plaintiff's jury verdict would have been allowed to stand had there been proof that the design lacked a "reasonable basis" or had been adopted without "due care."

The New York court's approach to the problem of governmental tort liability is a practical one. It does not grant total immunity invoking abstract phrases such as "uniquely governmental." Rather it holds open the possibility of recovery

while making sure, in its review of the evidence, that a jury is not allowed to second-guess a duly promulgated official decision on the basis of speculative and insubstantial evidence. By emphasizing the procedure by which the governmental decision was made, and not merely the question of whether in fact it turned out to be correct in every respect, cf. McGee v. Adams Paper & Twine Co., 26 A.D.2d 186, 198, 271 N.Y.S.2d 698 (1st Dept. 1966), the Court of Appeals accords due respect to the competence of the legislative and executive branches while still allowing recovery for the consequences of an inadequately considered and clearly negligent act.

Some of the broad language in *Weiss* appears due to the lack of direct relationship between the individual plaintiffs in that case and the municipal defendant. The court was dealing with a case involving "government planning for the public safety," and the "planning [of] government services." 7 N.Y.2d at 587, 200 N.Y.S.2d at 414, 167 N.E.2d at 66. The policy arguments for holding a government not liable are strongest when the act questioned involves a broad plan for the provision of services, such as the traffic system in *Weiss*, for the public as a whole. Such a high level exercise of policy judgment is not directed against any specific individuals, and thus it is logical that an individual plaintiff seeking damages as a consequence of the effect of that judgment on him should be held to a strict standard of proof. Viewed in this sense *Weiss* is somewhat similar to the cases cited to us by the City on this appeal, such as Steitz v. City of Beacon, 295 N.Y. 51, 64 N.E.2d 704, 163 A.L.R. 342 (1945); Motyka v. City of Amsterdam, 15 N.Y.2d 134, 138–139, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965), see Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 167–169, 159 N.E. 896, 62 A.L.R. 1199 (1928), which hold that a city is not liable to an individual for its failure to provide a service to the general public since it owed no duty to the plaintiff.

This case does not concern a failure to provide services or to plan properly for the public generally. Rather we have the issuance of a mandatory order directed to a named recipient and limited by its terms to a unique set of circumstances. The Fire Commissioner knew that the issuance of such an order would compel its recipient to follow its command or suffer legal sanction for disobedience. Under New York law this power to command obedience created a reciprocal duty on the part of the Commissioner to exercise due care in the issuance of his order. In Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958), such a reciprocal duty was premised on the aid given the police concerning the location of a notorious and dangerous fugitive from justice. The Court of Appeals held that once the informant's identity had been disclosed to the public by the police the City owed the informant the duty of exercising reasonable care in providing for his protection. We believe the principle of *Schuster* is applicable here. Once the Fire Commissioner elected to place Alva and its agents under the compulsion of law he owed them the duty of exercising reasonable care, taking into account the emergency nature of the circumstances, in formulating the terms of his order. While a city often is under no duty to provide services and exercise due care initially, once it elects to act in a specific situation it must carry out its responsibilities in a prudent manner, exercising due care with respect to those who will be immediately affected by its actions. See Matlock v. New Hyde Park Fire District, 16 A.D.2d 831, 832, 228 N.Y.S.2d 894, 895–896 (2d Dept. 1962) (majority opinion and Hopkins, J., concurring).

While it is true that the Fire Commissioner's order involved the exercise of his discretion and expertise, this alone does not render the City immune from liability if the order was negligently issued. Amato v. City of New York, 268 F.Supp. 705 (S.D.N.Y.1967), is cited

by the City, as it was by the district court, as supporting a contrary conclusion. There the city negligently issued a permit for a fireworks display, and during the display plaintiff's husband, a workman aboard a fireworks barge, was killed as the result of an explosion. The city's action in that case involved a far more attenuated relationship with the party injured as the result of its negligence than is present here. But while the case is distinguishable on this ground, to the extent that *Amato* suggests, that the presence of an element of "discretion" immunizes the City from liability for its negligence, see 268 F. Supp. at 707, we believe that it incorrectly interprets the New York precedents under § 8. The discretion of a governmental official is subject to the duty to abate a "known risk" if "danger to others is reasonably to be perceived." McCrink v. City of New York, 296 N.Y. 99, 106, 71 N.E.2d 419, 422 (1947). If instead of abating a known risk the Fire Commissioners' order aggravated that risk, and he reasonably should have perceived this increased danger, then the City is not immune from suit on the ground that there was an element of discretion in his action. See id. at 105, 71 N.E.2d 419.

■ We cannot agree with the district court that the City's non-liability is established as a matter of law by the fact that it was the salvor, rather than Fire Department personnel, who attempted to execute the Commissioner's order. The City, through its Commissioner, acted with the force of law in directing Alva's agent to execute its command. It cannot now claim automatic immunity on the ground that the private party obeyed the law.

We hold only that under New York law, and on the pleadings and affidavits before us, summary judgment is not appropriate at this stage of the litigation. The great variety of facts which might be established under the pleadings require that this case be remanded for a full exploration of the circumstances surrounding the explosion, and that the

ultimate issue of liability not be addressed on this motion for summary judgment.

Thus far we have not mentioned the choice of law problem which occupied a large portion of the district court's opinion. Any tort committed by the City was a maritime tort, for the injurious consequences of its action occurred on navigable waters. Hess v. United States, 361 U.S. 314, 315, 318, 80 S.Ct. 341, 4 L. Ed.2d 305 (1960). The admiralty jurisdiction of the court being properly invoked, this question is presented: Should the court apply state law in determining the City's liability, or must it, because of a demonstrated need for uniformity in the law applicable to all admiralty suits on this subject, apply or fashion a rule of maritime law in this case? Cf., e. g., Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). See generally, Stevens, Erie R. R. v. Tompkins and the Uniform General Maritime Law, 64 Harv.L.Rev. 246 (1950); Currie, Federalism and the Admiralty: "The Devil's Own Mess," 1960 Supreme Court Review 158. The district court concluded that there is no maritime rule governing the liability of cities for their torts which conflicts with the New York law on this subject. It then applied state law, finding no "constitutional" obstacle to this course. Neither party to this appeal has argued or briefed this choice of law issue, each relying wholly on New York case precedents.

■ We think it clear that there can be no objection to the application of state law in the area of governmental tort liability when it does not defeat an otherwise meritorious maritime cause of action. We can perceive no need for uniformity in the admiralty law which requires that a state agency be accorded a broader scope of immunity from suit than that recognized by state law. The Supreme Court, especially in recent years, has allowed the application in admiralty of state laws which broaden the scope of a party's liability beyond that

recognized in the maritime law, e. g., Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960), Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941), while it has tended to reject the application in admiralty of state laws which narrow or wholly defeat a previously recognized maritime right of recovery. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); see Garrett v. Moore-McCormack Co., 317 U.S. 239, 243–246, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Thus under our interpretation of New York law we see no reason why that law should not be followed in this admiralty case.

But upon remand it is still possible that proof of additional facts not now before us may establish that the City cannot be held liable under New York's Court of Claims Act, § 8, and yet that it would be liable under the normal maritime rule of negligence. See Kermarec v. Compagnie Generale, Transatlantique, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). In this circumstance the propriety of following New York law would be dependent upon considerations not mentioned by the district court in its opinion.

█ The district court's implicit conclusion that there is no relevant maritime law respecting governmental immunity was not founded on an extensive discussion of this issue. Its conclusion may well be correct, although some doubt is raised by Workman v. City of New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900). *Workman* held that state law in-

vesting a municipality with the sovereign attribute of immunity from suit could not defeat a maritime cause of action based on the negligent operation of a city fireboat. In stating that *Workman* "must be limited to its facts" the district court was correct in one sense.· Certainly the Supreme Court's refusal to follow the then extreme New York rule· on municipality immunity would not compel the district court to disregard the more liberal state rule currently in effect under the Court of Claims Act. What *Workman* does require is that a judicial inquiry be made concerning the propriety of following state law in any admiralty case where the application of that law would defeat an otherwise meritorious maritime cause of action.[6] The district court did not make such an inquiry.

█ This inquiry cannot be avoided even if it is true that heretofore there has been no maritime rule in the area of governmental immunity. It is settled that even if a state law does not contravene an established principle of admiralty law in certain circumstances it may so disrupt the uniformity of the admiralty law in some crucial respect that it must be deemed preempted. See The Roanoke, 189 U.S. 185, 195–197, 23 S.Ct. 491, 47 L.Ed. 770 (1903); Currie, supra, at 166–67; see Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 314, 75 S.Ct. 368, 99 L.Ed. 337 (1955).[7]

█ The preemption inquiry, in the circumstances of this case, would

**6.** Since the New York court decisions giving immunity to local governmental units rest on considerations of public policy rather than an assertion of sovereign immunity, Weiss v. Fote, 7 N.Y.2d 579, 585, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), the Eleventh Amendment would not bar a federal court from applying a uniform rule of admiralty rather than state law in this area. Cf. Ex Parte New York, 256 U.S. 490, 499–500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 276–277, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

**7.** This aspect of admiralty law has a parallel in the preemption doctrine surrounding the·interstate commerce clause. The states are permitted to exercise concurrent regulatory power over interstate commerce save where the exercise of this power interferes with a scheme of federal regulation or imposes an undue burden on commerce. See, e.g., Head v. New Mexico Bd. of Examiners in Optometry, 374 U.S..424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963); Cooley v. Board of Wardens, etc., 53 U.S. (12 How.) 299, 315–321, 13 L.Ed. 996 (1852).

consider the need for preserving a uniform maritime rule, granting recovery for damage caused through negligence, against the varying exceptions created by the laws of the 50 states limiting the tort liability of cities. Any adverse impact which might be caused by following state law in this area should be especially evident in New York Harbor, since the laws of New Jersey and New York would create two different rules of recovery and the statutes governing the liability of the United States possibly a third. The necessity for uniformity must be addressed in specific terms, and not in an abstract aesthetic sense. See Kossick v. United Fruit Co., 365 U.S. 731, 742–743, 81 S.Ct. 886, 6 L.Ed.2d 56 (Frankfurter, J., dissenting). The state's interest in reasonably limiting the liability of its financially troubled cities for their torts is entitled to some recognition if the need for uniformity is not pressing. At the same time, it must be admitted that the Supreme Court's decisions in this area, although explicitly premised on the relative need for uniformity in the admiralty law, are often better explained as stemming for a solicitude toward maritime plaintiffs threatened with nonsuit under a local law. See Currie, supra, at 208–20. The need for federal judicial protection of the maritime rights of litigants may be thought to be especially great in this area of governmental immunity, where the state lawmakers do not occupy a position of strict neutrality.

█ We intimate at this time no view concerning the outcome of this choice of law inquiry, for such an inquiry may never become necessary in this litigation. The difficulty of a determination of this type dictates that it not be addressed until squarely, specifically, and unavoidably presented, and then only upon full argument on the issue by all parties. Cf. Romero v. International Terminal Operating Co., 358 U.S. 354, 373–376, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

Reversed and remanded.

