Rita Hooper DALE, a former incompetent person, Plaintiff-Appellant,

v.

Demarest J. HAHN, individually and as committee of the person and property of Rita Hooper Dale, for the period of July 24, 1962 until April 10, 1967; Alan D. Miller, M.D., individually and as Commissioner of the New York State Department of Mental Hygiene; Edward Pious, individually and as committee of the person and property of Rita Hooper Dale for the period of April 10, 1967 until the present; and Lawrence P. Roberts, M.D., individually and as Director of Harlem Valley State Hospital, Defendants-Appellees.

No. 169, Docket 35059.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1970.

Decided Feb. 19, 1971.

Lumbard, Chief Judge, concurred in part and dissented in part and filed opinion.

Bruce J. Ennis, Jonathan Weiss, Mark Wurm, New York City, for plaintiff-appellant.

Irving L. Rollins, Asst. Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., for defendants-appellees Alan D. Miller, M. D. and Lawrence P. Roberts, M. D.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

In 1951 plaintiff Rita Dale was involuntarily committed to Harlem Valley State Hospital in Wingdale, New York. She contends that she was committed as an alcoholic while the defendants contend that she was committed as a mental incompetent. In 1962, allegedly in order to facilitate payment to the New York Department of Mental Hygiene of amounts claimed to be due for services and treatment rendered to plaintiff, the hospital director, defendant Roberts, petitioned a state court for an order under § 1374 of New York Civil Practice Law and Rules (now § 102 of New York's Mental Hygiene Law) declaring plaintiff to be incompetent and appointing a committee to handle her affairs. Plaintiff alleges that she did not receive personal notice of that petition, and also that she was not given an opportunity to retain counsel, to appear and be heard in opposition to the petition, and to have a jury trial. Sections 1374 and 102 do not require any of the above procedures, which have been associated with due process, as a matter of right. The petition was granted without a hearing, and

defendant Hahn was appointed as the committee. On April 10, 1967, defendant Pious was appointed as the successor committee. Again, plaintiff allegedly received no notice of the proceeding and was given no opportunity to be heard. On April 18, 1967 plaintiff was discharged. Thereafter she was declared competent, and is now gainfully employed.

The committees, during their existence, disbursed $7,992.92 of plaintiff's assets, $5,686.16 to the Department of Mental Hygiene and $2,306.76 for expenses incurred by the committees in their operation. There remained, after an accounting, $6,863.18 of the principal and interest, which amount is being used by plaintiff, now 69, apparently as a supplement to her earnings.

In her amended complaint plaintiff purports to set up a class action, seeks the convening of a three-judge court, prays for a declaratory judgment that § 102 is unconstitutional and for temporary and permanent injunctions against the implementation of § 102 and any action by all existing committees, and demands the return of all moneys had and received by defendants either as or through plaintiff's committees. Jurisdiction is alleged under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983. Also, one Antonio Escariz has moved to intervene as a named plaintiff. The case against defendant Pious was dismissed by stipulation. Relying upon multiple grounds the district court below granted the motion of the remaining defendants to dismiss under Rule 12(b), and it is from this last decision that plaintiff appeals. We disagree with the dispositive points upon which the result below was based and we reverse the judgment entered in the district court.

■ The district court held that Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2 Cir. 1968), was controlling on the question of jurisdiction under the Civil Rights Act because it considered that plaintiff's complaint primarily concerned the infringement of a property right.[1] We deem Escalera v. New York City Housing Authority, 425 F.2d 853, 864 (2 Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), and Birnbaum v. Trussell, 371 F.2d 672 (2 Cir. 1966), to be more analogous. At stake in the petition to appoint plaintiff's committee was plaintiff's right to enter into legal relations, to control and dispose of property, to enter into contracts, and to sue and be sued—in short, at stake were all the incidents of being a competent individual which are lost when one is declared to be incompetent. Although the plaintiff requests recovery of money alleged to have been illegally spent by the committee, any right she may have to the money is not the critical interest sought to be protected. The important ones are, rather, those affected by the declaration that she was incompetent to handle her own affairs. The stigma of incompetency, the implication that she has some kind of mental deficiency, with attendant untrustworthiness and irresponsibility, and the consequences to her reputation and her normal human relationships with others in her community involve more than a property right, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, decided January 19, 1971, and are sufficient to support jurisdiction under § 1343. See Birnbaum v. Trussell, *supra.* Unlike the claim in Bradford Audio Corp. v. Pious, 392 F.2d 67 (2 Cir. 1968), the adverse impact of the officials' action on her rights of personal liberty would exist regardless of the alleged illegal use of the money. We hold that plaintiff has stated a cause of action under 42 U.S.C. § 1983.[2]

■ The district court also ruled that, as plaintiff has made no allega-

---

1. See also Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969).

2. The district court also rejected plaintiff's alternative contention that jurisdic-

tion was proper under 28 U.S.C. § 1331 (a). Because we find jurisdiction under the Civil Rights Act, we do not reach the issue of whether this rejection was erroneous.

tions of wrongdoing, carelessness or lack of good faith by the defendants, the defendants are immune from suit for damages. The district court recognized, as we also do, that "the limits of official immunity in the context of the Civil Rights Laws is far from certain."[3] It is settled that judicial[4] and legislative[5] officers enjoy at least a qualified immunity from suit. Likewise, prosecutors,[6] and, in some instances, policemen,[7] enjoy a similar immunity. However, as stated in Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2 Cir. 1955):

> A showing that defendants acted "within the scope of their employment and authority" is not sufficient to defeat the district court's jurisdiction. It would nullify the whole purpose of the civil rights statutes to permit all governmental officers to resort to the doctrine of official immunity. The statutory condition of defendant's acting "under color" of state or territorial law contemplates that he act in an official capacity. To the extent that state or municipal officers * * * violate or conspire to violate constitutional and federal rights, the Civil Rights Laws * * * abrogate the doctrine of official immunity. See The Doctrine of Official Immunity Under the Civil Rights Acts, 68 Harv.L.Rev. 1229 (1955).

See also Jobson v. Henne, 355 F.2d 129, 133–134 (2 Cir. 1966). Thus it is apparent that there are competing considerations which must be balanced in deciding whether particular defendants are totally immune from liability and the limits of any qualified immunity. As announced by this court in Kletschka v. Driver, 411 F.2d 436, 448 (2 Cir. 1969):

> Even if New York law does grant defendants immunity this would not be binding on a federal court in an action brought under § 1983. Rather the court must determine under the facts presented whether the policy of liability reflected in the Act requires that the local rule of immunity be overridden, or whether under the circumstances the local rule must be followed to avoid too great an interference with the efficient operation of state government. See Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2d Cir. 1965); cf. Alva Steamship Co. v. City of New York, 405 F.2d 962, 969–971 (2d Cir. 1969). *See generally* Note, Section 1983: A Civil Remedy for the Protection of Federal Rights, 39 N.Y. U.L.Rev. 838, 852–854 (1964).

However, in balancing the competing considerations, we follow this court's previous counsel that "the defense of official immunity should be applied sparingly in suits brought under § 1983."

3. Dale v. Hahn, 311 F.Supp. 1293, 1305 n. 8 (S.D.N.Y.1970). The court cited Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72–73 (2 Cir. 1968); Kletschka v. Driver, 411 F.2d 436, 449 (2 Cir. 1969); Franklin v. Meredith, 386 F.2d 958, 961 (10 Cir. 1967); Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2 Cir. 1965); Jobson v. Henne, 355 F.2d 129 (2 Cir. 1966).

4. See, e. g., Dacey v. New York County Lawyers' Ass'n, 423 F.2d 188, 191–192 (2 Cir. 1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); Kenney v. Fox, 232 F.2d 288 (6 Cir.), cert. denied sub nom. Kenney v. Killian and Kenney v. Hatfield, 352 U.S. 855, 856, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); Silver v. Dickson, 403 F.2d 642 (9 Cir.

1968), cert. denied, 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969). The usual qualification is that the officer be acting in good faith within his authority. However, many judicial officers have absolute immunity regardless of any lack of good faith.

5. See, e. g., Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Lynch v. Johnson, 420 F.2d 818, 821 (6 Cir. 1970). See text of footnote 4,·*supra.*

6. See, e. g., Wilhelm v. Turner, 431 F.2d 177, 180–183 (8 Cir. 1970); Peek v. Mitchell, 419 F.2d 575, 578 (6 Cir. 1970); Kauffman v. Moss, 420 F.2d 1270 (3 Cir. 1970); Fanale v. Sheehy, 385 F.2d 866 (2 Cir. 1967).

7. See Pierson v. Ray, 386 U.S. 547, 557–558, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); cf. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Jobson v. Henne, *supra*, 355 F.2d at 133–134. We note here that the defendant Roberts was under no official compulsion to seek the appointment of a committee and that § 102 does not preclude the safeguards which plaintiff contends are constitutionally required. Also, plaintiff does not seek damages beyond the return of those moneys, plus interest, which were expended by the committees. While we do not intimate any opinion as to defendants' immunity in a case where consequential or punitive damages are sought, we do hold that the defendants are not immune from suit for compensatory damages to the extent that they have expended plaintiff's assets.[8] This lack of immunity should not seriously hamper the diligent administration of New York's Mental Hygiene Law, the latter factor being a consideration which in our estimation does not outweigh the policy of the Civil Rights Acts.

 The main thrust in the district court's opinion is the court's belief that plaintiff had failed to raise a substantial constitutional question. The primary support for this holding was the finding, based on affidavits submitted by the defendants, that plaintiff, contrary to her claim, had indeed received personal notice of the petition to appoint a committee to handle her affairs. While Rule 12(b), F.R.Civ.P., provides that a motion under Rule 12(b)(6) may be treated as a motion for summary judgment under Rule 56, it also provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." It seems fair to include within the term "reasonable opportunity" some indication by the court to "all parties" that it is treating the 12(b)(6) motion as a motion for summary judgment. Costen v. Pauline's Sportswear, Inc., 391 F.2d 81, 85 & n. 5 (9 Cir. 1968); 2A Moore, Federal Practice, ¶ 12.09, 2300–02 & nn. 23 & 25. Here, the district judge gave no indication that he was going to consider anything but the pleadings,[9] plaintiff filed no counter-affidavit, and the factual issue of whether she received notice was resolved against her on defendants' affidavits alone. This was error.

 In addition, without going into the merits of plaintiff's challenge to § 102, we cannot say that even if plaintiff had personally received notice of the appointment petition such receipt would automatically resolve the constitutional issue. Because of a mental hospital inmate's alleged condition, it may well be that personal notice to the inmate is insufficient and that independent guardians *ad litem* [10] should be appointed in all cases for such inmates. While we do not decide this issue now, we consider it

8. Hence, if plaintiff succeeds in her challenge to the appointment of her committees, she will be entitled to reimbursement from defendants for the expenses charged against her assets through the operation of the committees. However, as to the amounts paid to the Department of Mental Hygiene for services rendered by that Department, recovery should be disallowed to avoid multiple litigation. Plaintiff was liable for these latter amounts irrespective of the appointment of the committees; and the accounting in the state courts, at which plaintiff was fully represented, is *res judicata* as to these amounts.

9. Indeed, the district court's opinion, 311 F.Supp. 1293, also makes no mention of the possibility that defendants' motion was being treated as a motion for summary judgment.

10. See footnote 13, *infra*, and accompanying text. "Independent" would connote lack of connection with the hospital administration. In this regard, we view with skepticism appellees' apparently serious contention that service upon defendant Roberts, as plaintiff's custodian while in the hospital, was sufficient even if plaintiff did not receive personal notice. As Dr. Roberts was the originator of the petition for the appointment of a committee, it defies credulity that defendants would expect us to hold that he, the petitioner, could be, at the same time and in the proceeding he initiated, the person likely to insure adequate protection of plaintiff's interests.

substantial enough to require the consideration of a three-judge district court if the other prerequisites to the convening of such a court are met.[11]

Defendants argue that, inasmuch as the initial commitment proceedings provided due process safeguards, the state as *parens patriae* had complete control over plaintiff after that commitment, and the state could treat her and her affairs as it thought proper. This argument contains an overbroad characterization of the state's power as *parens patriae*.[12] Moreover, it overlooks well-established New York law that different issues are to be resolved on a petition to appoint a committee than those resolved at the initial commitment proceeding. As stated in In re Lugo's Guardianship,

10 Misc.2d 576, 172 N.Y.S.2d 104, 108 (Court of Claims 1958):[13]

Commitment under the Insanity Law does not change the status of the subject from competent to incompetent. He is known merely as an alleged incompetent.

See also Finch v. Goldstein, 245 N.Y. 300, 303, 157 N.E. 146 (1927); Hoff v. New York, 279 N.Y. 490, 494, 18 N.E.2d 671 (1939); Griffin v. New York Life Insurance Co., 272 App.Div. 939, 72 N.Y.S.2d 50 (2d Dept. 1947). Thus it is clear that different rights of an alleged incompetent are at stake in a proceeding to appoint a committee, rights which were not the subject of controversy in the initial commitment proceedings.[14]

11. The present appeal also raises the issue of whether a single judge, when faced with a request to convene a three-judge court, can resolve pertinent factual issues relative to that request by use of the summary judgment procedure. Although a single judge has the duty to determine whether the constitutional issues are frivolous or are obviously without merit, Green v. Board of Elections, 380 F.2d 445, 448 (2 Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968), it would seem that a single judge cannot delve deeper than the face of the pleadings in reaching this determination. Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933), rehearing denied, 366 U.S. 922, 81 S.Ct. 1090, 6 L.Ed.2d 245 (1961); Local Union No. 300, Amal. Meat Cutters & Butcher Workmen of North America A.F.L.–C.I.O. v. McCulloch, 428 F.2d 396, 399–400 (5 Cir. 1970); cf. Hargrave v. McKinney, 413 F.2d 320, 324 (5 Cir. 1969); Fort v. Daley, 431 F.2d 1128, 1131–1132 (7 Cir. 1970); compare 28 U.S.C. § 2284(5). However, it is not clear whether the district court actually granted summary judgment in this case and our decision rests on the grounds that it was improper for the district court to consider the affidavits defendants submitted in support of their motion to dismiss and that resolution of the issues relative to notice still leaves a substantial constitutional question to be adjudicated.

12. See the application of the doctrine of *parens patriae* to juvenile proceedings as discussed in Application of Gault, 387 U.S. 1, 14–19, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

13. Rev'd, 8 A.D.2d 877, 187 N.Y.S.2d 59 (3d Dept. 1959), aff'd, 7 N.Y.2d 939, 197 N.Y.S.2d 740 (1960). The issue in the cited case was whether a hospital inmate was entitled to a guardian *ad litem* in a suit against the hospital although she had not been declared incompetent to manage her own affairs. The Court of Claims held that she was not so entitled as no committee had been appointed. This order was reversed on the ground that, even if not declared incompetent, the inmate might still need a guardian *ad litem* to represent her in the suit.

Article 5 of the Mental Hygiene Law relating to hospitalization of the mentally ill was revised in 1964. Without considering whether this revision introduced changes as to the findings necessary for commitment, it is apparent that the revision is not applicable to plaintiff's 1951 commitment proceedings.

14. See Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); United States ex rel. Carroll v. McNeill, 294 F.2d 117 (2 Cir. 1961), vacated as moot, 369 U.S. 149, 82 S.Ct. 685, 7 L.Ed.2d 782 (1962); Watson v. Cameron, 114 U.S.App.D.C. 151, 312 F.2d 878 (1962) (Burger, J.,). In re Buttonow, 23 N.Y.2d 385, 297 N.Y.S.2d 97, 244 N.E.2d 677 (1968). These cases deal with the need for procedural safeguards where findings, not made in an initial proceeding, are the grounds upon which are based the con-

While we leave to further proceedings below the resolution of issues arising from inquiry as to whether plaintiff was afforded adequate procedural safeguards to these rights under § 102,[15] we do indicate that we find the issues rather troublesome.

 Plaintiff also contends that class action relief is appropriate. However, as plaintiff's own brief recognizes, members of the purported class may have experienced different treatment from that which plaintiff experienced relative to notice and the opportunity for a hearing in the appointment proceedings. Because of the possible variance in factual situations, it may well be that § 102 is unconstitutional as applied to certain members of the purported class and yet may be constitutional as applied to others.[16] Where such a line could be drawn is not readily apparent, and it would be much more appropriate to handle difficult constitutional questions arising from the application of the statute to varying fact-patterns on a case-by-case basis rather than in a class action. Therefore, we conclude that the class action must fail and that the motion to intervene by Escariz could have been properly denied.

 Inasmuch as class action relief is inappropriate, plaintiff must rely upon her own standing to seek injunctive relief in order to support her motion for the convening of a three-judge district court. At the time that this action was commenced plaintiff's committee had already ceased all active control over plaintiff's assets and all that remained before a discharge of the committee was the approval of a final accounting in a state court. Since the filing of this action, the final accounting has been approved and the committee has been discharged. Thus it appears that plaintiff no longer has standing to obtain injunctive relief. While we are mindful that a single judge cannot go beyond the pleadings in deciding whether injunctive relief is appropriate,[17] we appreciate that there is an obvious lack of judicial economy when specially constituted three-judge courts are needlessly convened. We deem the single judge's role in determining whether the prerequisites for a three-judge court are met to be a judicial, and not merely a ministerial, one.[18] Therefore, without passing on the question of whether plaintiff had standing for injunctive relief at the commencement of this action, we do not hesitate to hold that now a three-judge district court is not needed in this case.

The judgment of dismissal is reversed and the case is remanded for further proceedings consistent with this opinion. The denial of the motion for a three-judge court is affirmed.

LUMBARD, Chief Judge (concurring in part and dissenting in part):

Although I agree with the majority that Dale's arguments do raise substantial constitutional questions, I would

tinued or differential confinement of already confined mentally ill patients.

15. Likewise, since further proceedings will be had below, we do not now consider plaintiff's equal protection and right to privacy contentions. Fort v. Daley, 431 F.2d 1128, 1131–1132 (7 Cir. 1970).

16. Of course, variances in applicability would not defeat the requirement of a constitutional challenge to the statute necessary for the convening of a three-judge court. See Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 536 n. 10, 24 L. Ed.2d 567 (1970).

17. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Reed Enterprises v. Corcoran, 122 U.S.App.D.C. 387, 354 F.2d 519, 522 (1965); National Mobilization Com. to End War in Vietnam v. Foran, 411 F.2d 934, 936 (7 Cir. 1969); see footnote 11 *supra* and cases cited therein.

18. Heaney v. Allen, 425 F.2d 869, 871–872 (2 Cir. 1970); Majuri v. United States, 431 F.2d 469 (3 Cir. 1970); Merced Rosa v. Herrero, 423 F.2d 591, 592 n. 1 (1 Cir. 1970); contra Jackson v. Choate, 404 F.2d 910 (5 Cir. 1968).

nevertheless affirm the district court's dismissal of the complaint.

I disagree with the majority that the district court erred in holding that Dale's claim for relief stated no cause of action under the Civil Rights Act. Dale's claim was brought under 42 U.S. C. § 1983 for the deprivation of rights secured to her by the Fourteenth Amendment, and jurisdiction was based on the Civil Rights jurisdictional statute, 28 U.S.C. § 1343(3) and (4). For many years it has been settled that a suit brought under these sections can be entertained in federal court only when it alleges the infringement of a personal right incapable of pecuniary evaluation, and not when it alleges the invasion or deprivation of a property right. E. g., Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900); Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Stone, J., concurring); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). In the instant case, Dale alleges that the appointment of the committee pursuant to § 102 deprived her of her property and the right to control that property, without due process of law. Since she thus alleges the infringement of pure property rights, her claim does not state a cause of action under § 1983 and § 1343(3) and (4).

The majority seem to feel that the rights allegedly infringed here are indeed personal civil rights incapable of pecuniary evaluation and that hence Dale has stated a cause of action under § 1983. They cite as such personal civil rights Dale's "right to enter into legal relations, to control and dispose of property, to enter into contracts, and to sue and be sued"—all of which are "incidents of being a competent individual" and all of which "are lost when one is declared incompetent." I disagree. The alleged infringement of even these rights derived from and depended upon the taking away of her property; and we have clearly stated that when "the loss of freedom derives from and is dependent for its exercise upon the infringement of the property right the action is not within the jurisdiction of § 1983." Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968). As in *Bradford,* the freedom here "can only be claimed to be impaired or lost when there has been an infringement of a property right—in this case the alleged unlawful seizure of the money." *Id.*

I do believe, however, that in certain very limited types of cases the deprivation of property rights will give rise to a cause of action under the Civil Rights Act. One such class of cases is that involving welfare recipients, where the property taken away is the sole means of living for the plaintiffs. See Johnson v. Harder, 438 F.2d 7 (2d Cir. decided February 9, 1971). But in the instant case, there are no such special circumstances. Hence, Dale's suit falls squarely within the "property rights" limitation on actions brought under § 1983 and § 1343(3); and consequently I feel that the district court was quite correct in dismissing Dale's complaint for lack of jurisdiction.

I concur in the majority's denial of the motion to convene a three-judge court, for, as my brothers recognize, Dale no longer has any basis for injunctive relief for herself and a class action is clearly inappropriate. Indeed, although the majority declined to pass on this question, I believe that Dale had no basis for injunctive relief on the date when she brought suit—August 11, 1969 —and thus at that time she could hardly have represented any class who could have alleged a basis for such relief.