James **MACKLIN** et al.,
**Plaintiffs-Appellants,**

v.

Albert **BUTLER** et al.,
**Defendants-Appellees.**

No. 76–1581.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1977.

Decided April 15, 1977.

Perry H. Harrold, Indianapolis, Ind., for plaintiffs-appellants.

Charles R. Isenberg, Louisville, Ky., William C. Moyer, New Albany, Ind., for defendants-appellees.

Albert R. Butler, pro se.

Jesse L. Carter, Indianapolis, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

PER CURIAM.

The district court's judgment of April 2, 1976, dismissed appellants' complaint as against appellees Taylor and Local 481 of the International Brotherhood of Electrical Workers (the Union) for failure to join indispensable parties, and granted summary judgment in favor of appellees Butler, Carter, and the Indianapolis Plan for Equal Employment, Inc. (the Plan). The complaint proceeded on numerous theories with respect to the various defendants-appellees, charging, in essence, racial discrimination on the part of each of them and in concert in the operation of the Plan, which, as pertinent here, is a program to bring increased numbers of minority employees into skilled trades in the electrical construction industry. Little purpose would be served by a fuller statement of facts and legal theories involved; reference will be made hereinafter to those of particular importance in the resolution of this appeal.

I

With respect to the entry of summary judgment in favor of appellees Carter, Butler, and the Plan, we note that this is one of those troublesome cases in which an appeal follows a disposition occurring by way of procedures amounting to something less than a full trial and which, upon consideration of the briefs, oral argument, and record, presents serious procedural questions in a record situation wherein further attention at the trial court level with rectification of any procedural errors conceivably could be

followed by the same result as before in the litigation. Nevertheless, bearing in mind the words of Mr. Justice Frankfurter that fairness of procedure is due process in the primary sense, *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 161, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (concurring opinion), we address ourselves to the issues raised upon this appeal to determine whether a reversal is required.

 Appellants' first objection is that the record contains no motion for summary judgment. We disagree. It is clear that pleadings may incorporate earlier pleadings by reference, Fed.R.Civ.P. 10(c), and that is what has happened here. On February 14, 1975, Butler and Carter filed a "Motion to Dismiss" appellants first (later twice amended) complaint. The concluding portion of that motion was captioned "Prayer and Alternative Motion," the alternative motion being for summary judgment. No affidavits were attached, although a supporting memorandum, not sworn nor in affidavit form, made factual assertions and had twelve exhibits attached.[1] Appellants' subsequent amendments to their complaint mooted the February 14 motions, but Butler's November 5, 1975, "Motion to Dismiss" the second amended complaint reiterated, reasserted, realleged, and incorporated therein by reference each of the allegations and defenses set out in the original motion to dismiss and supporting memorandum. No exhibits or affidavits were attached to the November 5 motion. The memorandum supporting it was cast entirely in terms of the complaint's failure to state a relievable claim. There was no assertion in the motion or memorandum that material facts were not genuinely disputed; and the words "summary judgment" did not appear on either document. Carter and the Plan filed a "Motion to Dismiss" on December 4, 1975, which incorporated and alleged on their behalf all of the answers and defenses contained in Butler's November 5 motion. Like Butler's November 5 submissions, the December 4 motion was devoid of indications within the "four corners" that it was offered as a summary judgment motion. Nonetheless, on the narrow question of whether such motions on behalf of Carter, Butler, and the Plan were properly before the district court, we believe the incorporations by reference were sufficient to accomplish that result. Even if it were otherwise, appellees' submission, on March 18, 1976, of matters outside the pleadings (affidavits), not excluded by the district court, would in effect have converted the motions to dismiss into motions for summary judgment. Fed.R.Civ.P. 12(b).

 Appellants' next and related argument is that they did not have adequate notice that the district court intended to rule on the appellees' motions as motions for summary judgment and that they did not receive a fair opportunity to establish the existence of material controverted facts. We agree. Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleading, but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We think it obvious that this rule contemplates both fair notice that a summary judgment motion has been made and a reasonable opportunity to respond to the moving party's supporting materials. Appellants did not make any submissions setting forth specific controverted and material facts, and the district court ruled without the benefit of any such submissions which they could have (and which they represent here that they would have) made if a fair chance therefor had been given.[2] This was error.

---

1. The memorandum did not meet the requisites of Rule 56(e), Fed.R.Civ.P., and could not properly have been relied upon by the district court as thus submitted. *See Local Union No. 490, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO v. Kirkhill Rubber Company,* 367 F.2d 956, 958 (9th Cir. 1966)

(dictum). The same thing is true of the accompanying documents.

2. The district court considered affidavits submitted by appellants in January 1976, which it properly could do, but these do not represent the fair chance to respond which Rule 56 contemplates. Appellants assert that these were

■ Prior to appellees' March 18, 1976, filing of 127 pages of affidavits and supporting documents, appellants did not have fair notice of the pendency of a motion for summary judgment. As we have seen, neither of the motions on which the district court acted made any express reference to summary judgment.[3] Prior to March 18, no affidavits in support of such a motion had ever been filed in proper form. *See* note 1 *supra.* Of course, Rule 56 allows the district court to consider pleadings, depositions, answers to interrogatories, and admissions on file with the court; and we do not doubt that summary judgment could be properly granted on such materials, in a proper case, although no affidavits were submitted. But in such cases, where matters which are filed with the court without regard to the pendency of a summary judgment motion are used to sustain such a motion, there is a real danger of unfair surprise if special precautions are not undertaken to insure a reasonable opportunity to respond. *See Citizens National Trust and Savings Bank of Riverside v. Munson Equipment,* 24 F.R.D. 193, 196–97 (S.D.Cal. 1959).

■ The situation is closely analogous to that which is presented when a motion to dismiss for failure to state a relievable claim is converted into a summary judgment motion by the submission of matters outside the pleadings. In that circumstance, Fed.R.Civ.P. 12(b) expressly requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." As the Second Circuit has held,

> It seems fair to include within the term "reasonable opportunity" some indication by the court to "all parties" that it is treating the 12(b)(6) motion as a motion for summary judgment. [Citations omitted.] Here, the district judge gave no indication that he was going to consider anything but the pleadings, plaintiff filed no counter-affidavit, and the factual issue [in the case] was resolved against her on defendants' affidavits alone. This was error. [Footnote omitted.]

*Dale v. Hahn,* 440 F.2d 633, 638 (2d Cir. 1971). No such notice was given here, and even if we assume that the March 18, 1976, filing of appellees' affidavits put appellants on adequate notice that a summary judgment motion was actively pending, no reasonable opportunity to respond was given.

The district court's judgment was entered on April 2, 1976, only fifteen days after the filing date of the affidavits. Indeed the time may have been narrower than that. The affidavit of Butler to which were attached numerous exhibits bears a file mark date of March 19. The brief of appellants asserts that the "affidavits, as attached certificates of service reveal, were mailed to counsel for Plaintiffs-Appellants after March 18, 1976." We find nothing in the record to indicate the incorrectness of this assertion. Although under Rule 5(b), Fed. R.Civ.P., service by mail is complete upon mailing, inasmuch as March 18 was a Thursday, it appears reasonably probable that the appellants did not have actual notice of the filing until March 22. The judgment entered on Thursday of the following week being in the form of a comprehensive 32–page document would seem fairly to support the inference that its preparation had been commenced no later than during the first part of the week immediately following the week in which the appellants were actually aware of the filing of the affidavits. Even if the full time from

---

filed in support of their motion for a preliminary injunction, which was then pending, and the content of the affidavits was narrowly limited to the issues raised in that motion.

**3.** In fact, appellants have drawn our attention to a letter dated December 3, 1975, from counsel for Butler, Carter, and the Plan, and an accompanying "Entry on Pretrial Conference," signed by counsel for all the parties but not, for unexplained reasons, made a part of the record in this case, indicating the parties' agreement that Butler's November 5, 1975, motion would *not* be treated as a motion for summary judgment. While we are always hesitant to put much reliance on material outside the record, these materials, the authenticity of which was not denied at oral argument, indicate at least that there was considerable confusion regarding the status of the November 5 motion.

March 18 to April 2 were involved, however, we do not in the circumstances of this case believe that appellants received a fair chance to attempt to make their case against summary judgment.

The early resolution of factually unsupported claims is a salutary purpose of summary judgment procedure, but that procedure in no way authorizes disposition by surprise. We must reverse the district court's summary judgment for this reason alone. It may well be that summary judgment in favor of Butler, Carter, and the Plan will ultimately be the proper disposition of the claims asserted against them, but such a determination cannot be made without fair opportunity of all the parties to submit their case.

## II

As pertinent to appellees Taylor and the Union, the district court's judgment was a dismissal for failure to join, and because of the impossibility of joining, indispensable parties.[4] The district court concluded that each of the following were indispensable to the action: (1) the Marion County Building Trades Council and each of its seven component employer associations; (2) the Minority Coalition of Indianapolis and each of its six component organizations; (3) the Administrative and Operations Committees of the Plan; (4) the Operations Committee for the Electrical Industry, a part of the Plan; (5) each of the members of the National Electrical Contractors Association of Central Indiana, Inc. (NECA); and (6) those members of NECA who were employers of each of the appellants.

The district court's decision does not make clear why it determined that all of these parties should have been joined if feasible, within the meaning of Fed.R. Civ.P. 19(a). Those parties in groups (1) and (2) were signatories to the Memorandum of Understanding which established

the Indianapolis Plan, but the complaint in essence attacks discrimination in the operation of the Plan, not the terms or provisions of the underlying Memorandum. It is not at all apparent that in the signatories' absence complete relief between the present parties could not be accorded, or that any of the signatories claim an interest in the subject matter of this litigation which would be impeded by relief between these parties or which could subject the present parties to inconsistent obligations. *Id.* There is, moreover, nothing in the record suggesting that the Plan (the party) is anything other than the corporation established to administer the "Indianapolis Plan" (the agreement represented by the Memorandum of Understanding); unless it is, it would appear that the various committees set out in groups (3) and (4) are already a part of this lawsuit.

Likewise, the members *qua* members of NECA would appear to have only the interests of signatories, both to the Plan's underlying Memorandum of Understanding and to a supplemental memorandum articulating specific goals for the electrical industry. That the complaint's basic grievance is not with these memoranda has already been mentioned. When particular attention is given to NECA members *qua* employers of the appellants, as the district court did, there is, of course, a certain common sense appeal to the notion that employment discrimination must somehow involve employers. Some of the complaint's specific allegations would appear to indicate employer discrimination. But even here, the district court did not attempt to place NECA members *qua* employers within the analytic structure specified in Rule 19(a), and it is not clear that they fit therein. Assuming that it would generally be better practice to join employers in lawsuits against others which implicate employer misconduct, *cf. Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231

---

**4.** Butler's February 14, 1975, motion to dismiss asserted, *inter alia,* the failure to join as indispensable parties the City of Indianapolis and the United States Department of Labor, and his November 5, 1975, motion, and Carter's and the Plan's December 4, 1975, motions, may be said to have reasserted this failure by reference. The district court, however, did not find either the City or the Department to be indispensable; plainly its determination was made with reference to the motion of Taylor and the Union.

(1976), we do not think this would necessarily be required by Rule 19(a) in all cases.

 Where parties ought to be joined under Rule 19(a), that rule expressly contemplates that the district court will order the adverse parties to join them. This, of course, was not done here. Even if some of the non-parties named by the district court ought to have been joined, the opportunity to do so should have been offered. It is no answer to say that they could not be joined because they were not previously charged before the EEOC. Appellants properly point out that the discrimination they attack could, under a liberal reading of the complaint, be continuing, and an EEOC charge even now might result in a right-to-sue letter issued in time to allow joinder without substantial prejudice to any late-joined parties. This would, of course, be a matter for the district court to consider if and when it arises, but the possibility exists. And even if this procedure would be impossible, this record does not allow a firm conclusion that some or all of the named non-parties could not be joined under theories of the complaint other than those based on Title VII, 42 U.S.C. § 2000e et seq. *See Waters v. Wisconsin Steel Works of International Harvester Company,* 502 F.2d 1309 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

 Finally, if we assume despite all this that there were non-parties specified by the district court which could not possibly be joined, the district court's conclusory categorization of them (and all the others) as "indispensable" was error under Rule 19(b). That rule permits dismissal of lawsuits in which persons who should be joined therein are not and cannot be joined *only if* "in equity and good conscience" the action cannot proceed without them. This latter determination requires consideration of four specified factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the

prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* The district court gave no express consideration to any of these factors. We believe a discerning shaping of relief and other protective provisions in any judgment that might result could substantially avoid any prejudice that might otherwise result to non-parties while rendering ample justice to the parties. Nor is it apparent from this record that the plaintiffs could obtain an adequate remedy if the instant action were dismissed for nonjoinder.

For the reasons discussed herein, the entry of judgment against appellants must be and is reversed. The case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.