No. 83–1845. STEPHENS *v.* KEMP, SUPERINTENDENT, GEORGIA DIAGNOSTIC AND CLASSIFICATION CENTER. C. A. 11th Cir. The order entered December 13, 1983 [464 U. S. 1027], staying execution of sentence of death is vacated. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

The petitioner Alpha Otis O'Daniel Stephens has been condemned to death by electrocution. In this second petition for federal habeas relief, Stephens contends, *inter alia,* that he received the death penalty pursuant to a pattern and practice of racial discrimination in the administration of Georgia's capital sentencing system, in violation of the Eighth and Fourteenth Amendments. Specifically, he points to recently available statistical studies allegedly demonstrating a persistent and pronounced disparity in capital sentencing in Georgia based on the race of the defendant and the race of the victim. Stephens unsuccessfully has sought an evidentiary hearing to prove the accuracy and materiality of these data.

The courts below acknowledged that the Court of Appeals for the Eleventh Circuit has recently held in several cases that the *identical* evidence proffered by Stephens is sufficient to require an evidentiary hearing under 28 U. S. C. § 2254. The Eleventh Circuit in fact is currently considering en banc the very issues presented in Stephens' petition—whether the newly developed studies are reliable, and whether they are material to the constitutionality of Georgia's capital sentencing scheme. Stephens' petition has not been held pending the outcome of this en banc

consideration, however, because the courts below have concluded that Stephens has engaged in abuse of the writ. Specifically, they have determined that (1) although the new studies constitute "newly discovered evidence" for purposes of permitting relief on a first petition for habeas review, the identical studies do not constitute "newly discovered evidence" for purposes of securing relief on a second petition; and (2) Stephens in fact received an "evidentiary hearing" at which he failed to make an adequate "proffer" of the new studies.

Just last December, this Court stayed Stephens' execution pending the Eleventh Circuit's en banc resolution of the discrimination issue "or until further order of this Court." 464 U. S. 1027, 1028 (1983). In today's "further order," the Court inexplicably reverses course and decides that the execution may proceed notwithstanding the continued pendency of the discrimination issue before the Eleventh Circuit. To the extent this reversal purports to rest on deference to the lower courts' abuse-of-the-writ findings, I would respectfully submit that those findings fly in the face of the Fifth Amendment, 28 U. S. C. § 2254 and its attendant Rules, and well-settled precedent. Specifically, the record before us makes clear that (1) the proffered statistical studies are "newly discovered evidence" within the meaning of § 2254; and (2) Stephens did not receive the full and fair opportunity to introduce these studies to which he was entitled by law. At the very least, this case presents substantial questions concerning the abuse-of-the-writ doctrine that will recur with ever-increasing frequency. I therefore dissent from the Court's denial of certiorari and its vacation of the stay of execution.

## I

Stephens filed his second petition for habeas relief on November 14, 1983, two days before his scheduled execution.[1] Anticipating

---

[1] The tortuous history of Stephens' first federal habeas action is summarized in the District Court's opinion below. 578 F. Supp. 103, 104–105 (MD Ga. 1983). That action was not finally terminated until September 19, 1983, when the Court of Appeals for the Eleventh Circuit on remand from this Court considered and rejected the remaining claims in Stephens' first habeas petition. Over the next six weeks, Stephens' counsel investigated possible claims to raise in a second habeas petition and drafted the appropriate papers. On November 1, 1983, the Superior Court of Bleckley County, Ga., set Stephens' execution date for November 16, 1983. Stephens filed his second state

that the State of Georgia would plead abuse of the writ pursuant to 28 U. S. C. § 2254 Rule 9(b), Stephens explained that his discrimination claim was "based on factual evidence which Petitioner, as an indigent, did not have the independent means to develop and present." 1 Record 17. Stephens continued:

> "In mid-1982, however, statistical evidence became available that demonstrates that racial factors play a real and persistent role in the imposition of capital punishment in the State of Georgia, even when statutory and nonstatutory aggravating and mitigating circumstances are held constant and where only those cases indicted and convicted of murder are considered. A two-week evidentiary hearing to consider this extensive new social scientific evidence began on August 8, 1983 in *McCleskey* v. *Zant*, [580 F. Supp. 338 (ND Ga.), hearing en banc granted, 729 F. 2d 1293 (CA11 1984)], before Honorable J. Owen Forester. Under these circumstances, Petitioner's assertion of this claim upon this newly available factual basis cannot be deemed an abuse of the writ." *Ibid.*

Stephens requested "a hearing at which proof may be offered concerning the allegations of this petition," *id.*, at 49, indicated that the *McCleskey* record would form the basis of his proffer at such a hearing, and stated that he wished to call as expert witnesses the three statisticians who recently had testified in *McCleskey*, *id.*, at 59–60.

Later on the afternoon of November 14, Stephens' counsel were notified by telephone that the District Court had scheduled an emergency oral argument for the next afternoon. According to an affidavit subsequently filed by one of the attorneys:

> "[We] called Judge Wilbur Owens' law clerk to specifically ask what we needed to prepare for the argument. We indi-

---

habeas petition on November 7 in the Superior Court of Butts County. One week later, on November 14, those state proceedings were concluded when the Supreme Court of Georgia denied Stephens' application for a certificate of probable cause to appeal the lower state court's denial of his petition. Stephens filed his federal petition later that same afternoon. The Supreme Court of Georgia stayed the execution to permit Stephens to pursue his federal action, and the Superior Court of Bleckley County thereafter reset Stephens' execution for December 14, 1983. This Court issued an indefinite stay only hours before the scheduled execution. See *infra*, at 1049.

cated that on only one days notice it was almost impossible to produce witnesses at that time.

". . . Judge Owen's *[sic]* law clerk responded that the Judge was interested in hearing argument on whether Mr. Stephens petition was an abuse of the writ. The law clerk further informed us that the Judge did not expect counsel to bring witnesses to Savannah." Affidavit of George B. Daniels, attached to Petition for Rehearing and Suggestion for Rehearing En Banc, Appeal No. 83–8844 (CA11).

The State of Georgia filed its response to Stephens' petition the next morning; as expected, the State alleged that Stephens was abusing the writ. Oral argument commenced at 3:30 that afternoon. The court announced that it had convened the session to hear argument whether "a successor petition should be entertained by this Court" and whether the execution should be stayed to permit further proceedings. 2 Record 3, 76.

Stephens' counsel described the nature and findings of the statistical studies that recently had been found sufficient to trigger an evidentiary hearing in *McCleskey,* and indicated that those studies would form the proffer if a hearing were granted in the instant case.[2] The court responded that "I am familiar with the circumstances" of the studies and that "[t]his has been discussed in other cases with me." *Id.,* at 33. When the court expressed skepticism that the studies could be characterized as "new" evidence,[3] Stephens' counsel emphasized that the studies had become available only after Stephens' first habeas petition had been dismissed, that as an indigent Stephens could not have afforded the prohibitive cost of underwriting independent studies, and that because the studies could not reasonably have been produced in previous proceedings, they were properly characterized as "new" evidence within the meaning of Habeas Corpus Rule 9(b). *Id.,* at 31–32. When the court asked for more specific details concerning

---

[2] Counsel stated, for example, that "[t]he evidence is that there is a greater willingness by prosecutors to permit white defendants to plead to voluntary manslaughter in black victim cases; that there is a greater likelihood of a black receiving a conviction for murder in white victim cases; and, a sharply higher death sentencing rate for white victim cases among cases advancing to the penalty phase." 2 Record 41.

[3] See, *e. g., id.,* at 31–32: "Are you telling me that nobody could have dug up that same evidence before? . . . [W]hat prevented them from doing it, is my question? Nothing, isn't that the truth?"

the studies, counsel responded that the methodology was "fairly complicated" and suggested that, if the court wished to review the data, counsel not later than the next morning could deliver the several file drawers of evidence adduced at the *McCleskey* hearing. *Id.*, at 42.

Much of the remaining argument was devoted to a discussion whether the court should hold an evidentiary hearing to probe the issues in further detail. In response to the court's question, "What kind of evidentiary hearing am I going to hold?", *id.*, at 68–69, Stephens' counsel reviewed the evidence they proposed to introduce and emphasized that "we are prepared to proceed immediately, just as soon as the Court will give us a hearing, with the trial to put on our evidence and to hold an evidentiary hearing." *Id.*, at 75.

In postargument motions filed shortly after the argument, Stephens again reviewed the evidence he proposed to introduce at an evidentiary hearing,[4] moved for a reference of the discrimination issue to a magistrate,[5] and called to the court's attention two recent cases in which the Eleventh Circuit had remanded habeas petitions for evidentiary hearings on the *identical* statistical evidence.[6]

On November 21, the District Court summarily dismissed Stephens' petition as an abuse of the writ and denied his applications for a stay of execution, for discovery, and for funds to retain experts. 578 F. Supp. 103, 108 (MD Ga. 1983). The court also specifically denied Stephens' requests for an evidentiary hearing. *Ibid.* With respect to the merits of the discrimination claims, the court stated:

---

[4] Stephens stated that the *McCleskey* record on this issue "is in excess of 2,000 pages and contains over 150 exhibits, none of which is self-explanatory," and indicated that if the court had any remaining doubts Stephens was "prepared to proffer this record to show the evidence that would be introduced in this case showing discriminatory application of the death penalty." 1 Record 102.

[5] The motion was made pursuant to 28 U. S. C. § 636 and 28 U. S. C. § 2254 Rule 8(b). Stephens urged that such a reference would permit a thorough evidentiary hearing on the accuracy and materiality of the "voluminous and complex scientific evidence" being proffered "without overburdening this Court." 1 Record 110.

[6] *Id.*, at 102, citing *Ross* v. *Hopper*, 716 F. 2d 1528 (CA11 1983), rehearing en banc granted, 729 F. 2d 1293 (1984); and *Spencer* v. *Zant*, 715 F. 2d 1562 (CA11 1983), reconsideration en banc stayed, 729 F. 2d 1293 (1984).

"[I]t is the opinion of this trial judge that petitioner's excuse is insufficient to justify a consideration of them in this successive petition. The statistical evidence which petitioner desires to present to support his claims is not 'newly discovered.' Nothing prevented the compilation of this information prior to this late date. Accordingly, petitioner having no valid excuse for failing to raise these claims in his prior habeas petition, these claims constitute an abuse of the writ and must be DISMISSED." *Id.*, at 107.

The court endeavored in a footnote to distinguish Stephens' case from other Eleventh Circuit cases holding that the identical statistical surveys *are* newly discovered evidence and sufficient to trigger a right to an evidentiary hearing:

"Had petitioner raised these challenges to Georgia's capital sentencing statute in his prior habeas petition, this court would not have hesitated to hold an evidentiary hearing to ascertain the relevant *facts* upon which he relies in support of his claims.

"The court notes however that even if it were proper to consider the merits of petitioner's claims in this successive petition, at the November 16 *[sic]*, 1983 hearing he was unable to present any *facts* in support of his claim. He chose instead to rely upon bare conclusions." *Id.*, at 107, n. 2 (emphasis in original).

Stephens filed emergency applications for a certificate of probable cause and for a stay of execution with the Eleventh Circuit. A panel of that court heard oral argument on December 7 and, on December 9, denied both of Stephens' applications. 721 F. 2d 1300 (1983). The panel did not address the District Court's conclusion that the statistical evidence was not newly discovered within the meaning of §2254. Rather, it seized upon note 2 of the District Court's opinion to conclude that Stephens in fact had received the required evidentiary hearing and had failed to make a proper "proffer" of the statistical evidence.[7]

---

[7] The panel noted that Stephens' discrimination claim

"relies on this court's recent decision in *Spencer* v. *Zant* . . . . In claiming that Georgia's death penalty statute is administered in an arbitrary and discriminatory manner in violation of his eighth and fourteenth amendment

Stephens filed a petition for rehearing and a suggestion for rehearing en banc on December 10, which was denied on December 13 in a 6–6 vote. 722 F. 2d 627 (1983). Five of the dissenting judges argued that (1) the statistical data were "newly discovered" within the meaning of § 2254; (2) Stephens had made an adequate proffer for purposes of the November 15 oral argument; and (3) the November 15 oral argument had not been an "evidentiary hearing." *Id.*, at 628–629. Judge Kravitch, who had joined in the earlier panel decision, now filed a separate dissenting opinion emphasizing that there was "a serious question concerning petitioner's opportunity to proffer evidence at the district court hearing, a factor crucial to the panel's holding." *Id.*, at 629.

Stephens filed an emergency application for a stay of execution with JUSTICE POWELL, which was referred by him to the entire Court and granted late in the evening of December 13. The Court issued an order staying Stephens' execution "pending the decision of the United States Court of Appeals for the Eleventh Circuit in *Spencer* v. *Zant*, [715 F. 2d 1562 (1983), reconsideration en banc stayed, 729 F. 2d 1293 (1984)], or until further order of this Court." 464 U. S. 1027, 1028 (1983). The Court subsequently denied the State's motion to vacate the stay of execution. 465 U. S. 1016 (1984). Today the Court reverses itself and decides, without explanation, that Stephens can be put to death notwithstanding the continued pendency of *Spencer* and the other cases consolidated for resolution by the Eleventh Circuit.

## II

We need not decide whether Stephens' proffered statistical evidence is sound or whether, if sound, it sufficiently demonstrates

---

rights, petitioner must prove ' "some specific act or acts evidencing intentional or purposeful . . . discrimination against [the petitioner]" on the basis of race, sex or wealth.' . . . Petitioner alleges that a 1980 study by a Dr. David Baldus supports his claim. This is a similar contention to that made in *Spencer*. Here, however, the similarity ends. In *Spencer*, which involved a first petition for habeas corpus, the so-called Baldus study was proffered as evidence at the district court hearing. A panel of this court held that the evidence as proffered was material and should have been received. In the present case the issue arose at a hearing concerning abuse of the writ but no such proffer was made by petitioner. Indeed, no evidence of any kind was proffered that would either establish petitioner's claim or demonstrate that the claim was supported by intervening facts." 721 F. 2d, at 1303.

an invidious application of Georgia's capital sentencing scheme.[8] At the time Stephens filed his second petition the law in the Eleventh Circuit was that the *identical* evidence was sufficient to trigger an evidentiary hearing, and the Eleventh Circuit en banc has now consolidated three cases to resolve issues concerning the accuracy and materiality of this evidence.[9] The principled approach would be to stay Stephens' execution pending the outcome of these consolidated cases; that is what the Court initially ordered last December. 464 U. S. 1027 (1983). Today the Court has abandoned this course, apparently on the strength of two inexplicable findings by the courts below: (a) that Stephens' proffered evidence is not "newly discovered"; and (b) that Stephens in fact has already received the "evidentiary hearing" that he has requested.

## A

The only ground raised by Georgia in its abuse-of-the-writ allegation concerning Stephens' discrimination claim is that Stephens unreasonably failed to assert this claim in his prior habeas petition, in violation of Habeas Corpus Rule 9(b). Congress has

---

[8] The Fourteenth Amendment condemns the racially discriminatory application of legislation that is neutral on its face. See, *e. g.*, *Yick Wo* v. *Hopkins*, 118 U. S. 356 (1886). Circumstantial or statistical evidence may sometimes demonstrate such "stark" racially disproportionate impact as to leave no room for any conclusion but that the legislation is being administered in an intentionally discriminatory manner. See, *e. g.*, *Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U. S. 252, 266 (1977). Members of this Court recurrently have noted that statistical evidence of disproportionate capital sentencing might demonstrate the constitutional infirmity of an otherwise neutral sentencing scheme. See, *e. g.*, *Furman* v. *Georgia*, 408 U. S. 238, 389–390, n. 12 (1972) (BURGER, C. J., dissenting) ("While no statistical survey could be expected to bring forth absolute and irrefutable proof of a discriminatory pattern of imposition, a strong showing would have to be made, taking all relevant factors into account"); *id.*, at 449 (POWELL, J., dissenting) ("If a Negro defendant, for instance, could demonstrate that members of his race were being singled out for more severe punishment than others charged with the same offense, a constitutional violation might be established").

[9] See, *e. g.*, *Ross* v. *Hopper*, 716 F. 2d 1528 (CA11 1983), rehearing en banc granted, 729 F. 2d 1293 (1984); *Spencer* v. *Zant*, 715 F. 2d 1562 (CA11 1983), reconsideration en banc stayed, 729 F. 2d 1293 (1984); *McCleskey* v. *Zant*, 580 F. Supp. 338 (ND Ga.), hearing en banc granted, 729 F. 2d 1293 (CA11 1984). *Spencer* was argued en banc on January 17, 1984; *Ross* and *McCleskey* were argued en banc on June 12, 1984; and all three cases are pending decision by the Eleventh Circuit.

instructed the courts that a "petitioner's failure to assert a ground in a prior petition is excusable," and thus not an abuse of the writ, if the ground rests on "newly discovered evidence." Advisory Committee's Note to Habeas Corpus Rule 9, 28 U. S. C., p. 358. "Newly discovered evidence" has a well-settled meaning: it is "evidence which could not reasonably have been presented" by the petitioner in the earlier proceeding. *Townsend* v. *Sain*, 372 U. S. 293, 317 (1963).[10]

To reject Stephens' statistical evidence on the ground that "[n]othing prevented the compilation of this information prior to this late date," 578 F. Supp., at 107, would eviscerate Congress' instruction that newly discovered evidence be given fair consideration. For "newly discovered evidence" by definition always existed at an earlier time; the inquiry, rather, is whether the petitioner *reasonably* either did not know about it or could not have presented it at an earlier proceeding (as would be the case, for example, with the discovery of a hidden gun or a fugitive eyewitness). *Townsend* v. *Sain, supra.*

There is no question in the instant case that the pertinent statistical studies did not become available until long after Stephens filed his first habeas petition in February 1979. Indeed, work on these studies had barely commenced at that time. See also *Spencer* v. *Zant*, 715 F. 2d, at 1582 (noting that as late as May 1982 these studies were available only through oral testimony). As the Eleventh Circuit en banc dissenters noted, at the time of Stephens' first habeas petition the then extant social science evidence had been held inadequate as a matter of law to raise a colorable claim of discrimination in Georgia's capital sentencing system. 722 F. 2d, at 628, citing *Spinkellink* v. *Wainwright*, 578 F. 2d 582 (CA5 1978), cert. denied, 440 U. S. 976 (1979); and *Smith* v. *Balkcom*, 660 F. 2d 573 (CA5 1981), modified, 671 F. 2d 858, mandate recalled, 677 F. 2d 20, cert. denied, 459 U. S. 882 (1982). And no fair-minded person could suggest that indigent, uneducated, incarcerated petitioners like Stephens should be charged with inexcusable neglect for having failed themselves to

---

[10] The "newly discovered evidence" standard was articulated in *Townsend* v. *Sain*, a case addressing first federal habeas petitions. The test is the same for successor petitions. See, *e. g.*, *Sanders* v. *United States*, 373 U. S. 1, 18 (1963) (standards concerning foreclosure from federal collateral review "govern equally" in the context of a successor writ).

perform or to underwrite sophisticated statistical sampling surveys and complex regression analyses of racial bias.

Moreover, courts within the Eleventh Circuit have repeatedly held that the identical studies offered by Stephens are newly discovered evidence within the context of a first habeas petition and, therefore, that "cause" existed for failing to introduce them at trial. See n. 9, *supra*. The test for "newly discovered evidence" is the same whether the evidence is presented in a first habeas petition or in a successor petition. See n. 10, *supra*. Even if some Members of this Court for some reason disagreed with the Eleventh Circuit's determination that these studies represent "new" evidence, the proper course would be to resolve the issue on review of the Eleventh Circuit consolidated cases. It would be enough for present purposes to conclude that evidence characterized by the Eleventh Circuit as "new" for purposes of a first habeas petition must also be characterized as "new" for purposes of a second.

## B

It is settled law that, once the State pleads abuse of the writ, the petitioner is entitled to an opportunity to rebut the allegation. *Sanders* v. *United States*, 373 U. S. 1, 20–21 (1963); *Price* v. *Johnston*, 334 U. S. 266, 292 (1948). "If the answer is inadequate, the court may dismiss the petition without further proceedings." *Ibid.* But unless it is "'conclusively show[n]'" that the response is without merit, the petitioner must receive an *evidentiary* hearing on the abuse-of-the-writ issue. *Sanders* v. *United States, supra,* at 20, citing *Machibroda* v. *United States*, 368 U. S. 487, 495–496 (1962) (where petitioner makes "specific and detailed factual assertions," evidentiary hearing must be scheduled); see also *Price* v. *Johnston, supra;* 28 U. S. C. § 2254 Rule 8.

To be sure, courts may employ means short of a full-blown evidentiary hearing to determine whether such a hearing is required. For example, a court may call upon the petitioner to explain in writing why his successor petition is excusable. Congress has approved just such a form notice, appended to Habeas Corpus Rule 9, which admonishes the petitioner to include all the factual allegations necessary to support the response. Similarly, the Rules encourage courts to hold oral arguments and "prehearing conferences" when there is doubt concerning the necessity of an evidentiary hearing. Such arguments "'may limit the questions to be resolved, identify areas of agreement and dispute, and

explore evidentiary problems that may be expected to arise. . . .
[S]uch conferences may also disclose that a hearing is unnec-
essary.'" Advisory Committee's Note to Habeas Corpus Rule 8,
28 U. S. C., p. 356 (citation omitted). This practice is common
and uncontroversial. But whether the petitioner's response is
elicited in writing or through oral argument, the governing stand-
ard is clear: if the response pleads facts that, if true, would entitle
the petitioner to relief, an evidentiary hearing must be held to
determine those facts. *Sanders* v. *United States, supra,* at 21–22.[11]

In the instant case, the District Court held an oral argument the
day after Stephens filed his habeas petition and the afternoon
after the State had pleaded abuse of the writ. As discussed in
Part I, *supra,* the purpose of this argument was to clarify whether
(1) Stephens' execution should be stayed, and (2) whether and to
what extent an evidentiary hearing was necessary to resolve the
underlying merits of Stephens' petition and the State's allegation
of abuse. For purposes of the oral argument, the discussion by
Stephens' counsel of the discrimination claim was more than ade-
quate to contest the State's allegation of abuse and to require an
evidentiary hearing on the matter. Counsel explained the stud-
ies' findings and how they related to the constitutionality of the
impending execution; noted that other courts had held that the
studies required an evidentiary hearing; emphasized that the stud-
ies had not been available when Stephens filed his first habeas
petition, and therefore constituted "newly discovered evidence";
and stressed that Stephens was prepared to proceed with an evi-
dentiary hearing on the issue at the court's earliest convenience.[12]

---

[11] A court may of course also require the petitioner to submit the evidence
he relies upon, so that the court may review that evidence to ensure that it
fairly supports the petitioner's factual allegations and is sufficient to require
an evidentiary hearing. This too is a common practice. Of course, the court
must actually inform the petitioner that he must tender his evidence and must
give him a reasonable opportunity to do so. If the petitioner after such
reasonable opportunity has neither submitted his evidence nor offered a
reasonable explanation for failing to do so, the court may dismiss the petition.
See, *e. g., Smith* v. *Balkcom,* 660 F. 2d 573, 575, n. 2, 585, n. 33 (CA5 1981),
modified, 671 F. 2d 858, mandate recalled, 677 F. 2d 20, cert. denied, 459
U. S. 882 (1982).

[12] The Eleventh Circuit en banc dissenters emphasized that this was a suffi-
cient proffer for purposes of the oral argument:

"Counsel for Stephens proffered evidence based on newly available studies,
(referring by name to the Baldus Study relied on in *Spencer*), summarized

The court responded that it was fully "familiar with the circumstances" of the studies. 2 Record 33.

Incredibly, the District Court and the Eleventh Circuit both appear to have concluded that this oral argument, unbeknownst to Stephens or his counsel, in fact constituted the "evidentiary hearing" Stephens and his counsel were seeking to obtain, and that counsel's failure physically to present the several file drawers of statistical data or the testimony of Stephens' three designated witnesses at that time waived any right to further consideration of the issue.[18] With all respect, I submit this is a shockingly unprincipled basis on which to send Stephens to the electric chair. Counsel have sworn that they were instructed by Judge Owens' law clerk *not* to bring witnesses to the oral argument, and there is nothing in this record to suggest to the contrary. Indeed, the entire tenor of the November 15 session demonstrates that it was the sort of nonevidentiary oral argument held hundreds of times every day in federal courthouses across the country. Five of the Eleventh Circuit en banc dissenters had no difficulty in concluding that "[t]he hearing held by the district court on November 15, 1983, was not an evidentiary hearing," 722 F. 2d, at 628, n. 3, and repeatedly so emphasized, see also *id.*, at 628, n. 1. Judge Kravitch, who initially had joined the panel judgment, stressed in a separate dissent that, at the very least, there was "a serious question concerning petitioner's opportunity to proffer evidence at the district court hearing." *Id.*, at 629.

If counsel were expected physically to proffer the evidence they had described in the petition and to appear in court with Stephens' designated expert witnesses, they should have been so informed. They were not. Stephens' petition for certiorari therefore raises

---

briefly the conclusions of the studies indicating a racially disproportionate imposition of the death penalty in Georgia, and when pressed for specifics stated that there would be presented the same evidence presented in the August, 1983 case of *McCleskey* v. *Zant*, . . . and that the evidence would be presented tomorrow if the court pleased." 722 F. 2d, at 628, n. 1.

[18] The Eleventh Circuit clearly construed the November 15 argument as having been an evidentiary hearing, see *supra*, at 1048, and n. 7, as does the State, see Brief in Opposition ii, 8, 9, n. 2, 12, 14–16, 18. If the District Court meant in the cryptic second footnote of its opinion to suggest instead that Stephens had failed to allege sufficient facts to require any further inquiry at all, that conclusion was clearly erroneous for the reasons discussed in the immediately preceding paragraph in text.

substantial questions implicating what I had thought until today were settled and fundamental principles under the Fifth Amendment, the habeas statutes, and the Habeas Corpus Rules.

*First.* Until today there was "no doubt" that the Due Process Clause requires at a minimum that adjudications affecting an individual's life, liberty, or property be preceded by (1) notice "reasonably calculated, under all the circumstances," to inform the aggrieved party of the pendency and nature of the proceedings against him; and (2) a meaningful hearing "'appropriate to the nature of the case.'" *Armstrong* v. *Manzo,* 380 U. S. 545, 550 (1965), quoting *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306, 313 (1950). "Due process of law . . . does not allow a hearing to be held . . . without giving [petitioners] timely notice, in advance of the hearing, of the specific issues that they must meet." *In re Gault,* 387 U. S. 1, 33–34 (1967). Particularly where a human life hangs in the balance, I had thought this principle axiomatically required fair notice of the nature of the hearing and whether evidence must be tendered at that time.

*Second.* The habeas statutes themselves require federal courts to follow minimum procedural safeguards in resolving petitioners' claims. To be sure, courts may "summarily hear and determine the facts," 28 U. S. C. § 2243, and habeas petitioners should therefore expect expedited processing of their claims. But Congress has instructed us to ensure that such expedited resolution be accomplished "as law and justice require." *Ibid.* Accordingly, the procedures surrounding an evidentiary hearing must "allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition," and habeas petitioners must receive a "*full* opportunity for presentation of the relevant facts." *Harris* v. *Nelson,* 394 U. S. 286, 298 (1969) (emphasis added). At Congress' direction, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.,* at 300. The ultimate question must always be whether the hearing accorded a defendant was in fact a "fair and meaningful *evidentiary* hearing." *Ibid.* (emphasis added).

This Court is not unfamiliar with the inherent tensions between expedited resolution of habeas petitions in capital cases and the need for fundamentally fair procedures. Just two Terms ago, for example, the Court decided in *Barefoot* v. *Estelle,* 463 U. S. 880, 894 (1983), that a court of appeals may expedite briefing and hearing on the merits of a capital case where the petitioner has

requested a stay of execution for consideration of his claims. The Court emphasized, however, that such expedited scheduling is permissible *only* "provided that counsel has adequate opportunity to address the merits *and knows that he is expected to do so.*" *Ibid.* (emphasis added). In the absence of such "appropriate notice," a court may not proceed to deny the stay. *Ibid.*

I would have thought that a similar conclusion must surely follow here. Where a habeas petitioner has designated with precision the documentary evidence and witnesses he would produce at an evidentiary hearing, the court may be entitled to schedule an expedited evidentiary hearing.[14] But counsel must be given notice that he is expected to produce the exhibits and the witnesses at the hearing. Where counsel reasonably believes that the scheduled session will consist merely of oral argument on the facial merits of the petition—the sort of preliminary argument that frequently is held in this sort of situation, see *supra*, at 1052–1053—and has received no notice suggesting to the contrary, the oral argument cannot later be characterized as an "evidentiary hearing" at which the petitioner unknowingly had and lost his only chance to avoid execution. I would have thought this principle applied with even greater force where, as here, there is uncontradicted record evidence that counsel in fact were affirmatively advised *not* to bring their witnesses to the argument.

*Third.* The Court's action also flies in the face of the Habeas Corpus Rules approved by Congress. Rule 8(c), for example, provides that an evidentiary hearing "shall be conducted as promptly as practicable, having regard for the need of counsel for both parties for adequate time for investigation and preparation." The Advisory Committee's Note to Rule 8 stresses that courts are

---

[14] To comply with Habeas Corpus Rule 8, however, such expediting is permissible only if the petitioner's counsel has had "adequate time for investigation and preparation." In scheduling the evidentiary hearing, the court must "take account of the complexity of the case, the availability of important materials, the workload of the attorney general, and the time required by appointed counsel to prepare." Advisory Committee's Note to Habeas Corpus Rule 8, 28 U. S. C., p. 356. See also *Barefoot* v. *Estelle*, 463 U. S. 880, 915 (1983) (MARSHALL, J., dissenting) ("In view of the irreversible nature of the death penalty and the extraordinary number of death sentences that have been found to suffer from some constitutional infirmity, it would be grossly improper for a court . . . to establish special summary procedures for capital cases").

to follow those procedures necessary to ensure that counsel can "prepare *adequately* for an evidentiary hearing." 28 U. S. C., p. 356 (emphasis added). I would have thought it elementary that a necessary component of such procedures is adequate notice that counsel will be expected to produce the documentary evidence and witness testimony on which the petition rests.

Similarly, Habeas Corpus Rule 11 commands the federal courts to apply the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with these rules." The notion of fair and adequate notice permeates the Civil Rules. Rule 12(c), for example, provides that if a court considers matters outside the pleadings in determining whether to enter judgment, the motion shall be considered as one for summary judgment "and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." Similarly, Rule 56 has consistently been interpreted to require both (1) "fair notice" to the nonmovant that he is expected to present controverting evidence, so as to avoid "unfair surprise" in the summary resolution of the dispute; and (2) a "reasonable opportunity" to present such evidence. *Macklin* v. *Butler*, 553 F. 2d 525, 528–529 (CA7 1977); see also *Plante* v. *Shivar*, 540 F. 2d 1233, 1234–1235 (CA4 1976) *(per curiam)*; *Dale* v. *Hahn*, 440 F. 2d 633, 638 (CA2 1971). Notwithstanding the expedited scheduling of habeas petitions in capital cases, these requirements are not "inconsistent" with the Habeas Rules. Indeed, they are a basic prerequisite to ensuring that the habeas remedy is administered "as law and justice require." 28 U. S. C. § 2243.

## III

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), and would therefore grant certiorari and vacate the death sentence in this case. But even if I believed otherwise, I would at the very least continue the stay of execution pending the Eleventh Circuit's en banc resolution of the underlying discrimination issue.

Stephens' petition presents questions that cut to the very heart of the Court's professed desire to ensure the fair administration of § 2254, particularly where the petitioner has been condemned to death. One need not reach the underlying merits of Stephens' discrimination claim to conclude that, on the basis of the record

before us, there is at the very least a substantial question whether his fate should be governed by the outcome of the consolidated cases that are now pending before the Eleventh Circuit en banc—cases that present the *identical* issues and turn on the *identical* evidence. Instead, Stephens will go to the electric chair on the strength of a finding that the evidentiary hearing he so fervently has sought has, in fact, already been held. This resolution does not comport with the administration of the Great Writ "as law and justice require." 28 U. S. C. § 2243. Rather, it is at best an example of result-orientation carried to its most cynical extreme.

I dissent from the Court's denial of certiorari and its vacation of the stay of execution.

JUSTICE STEVENS, dissenting.

In my opinion the Court should not act on the petition for writ of certiorari, and should not vacate its stay, until after the Court of Appeals for the Eleventh Circuit has decided the consolidated cases of *Ross* v. *Hopper*, 716 F. 2d 1528 (1983), rehearing en banc granted, 729 F. 2d 1293 (1984), *Spencer* v. *Zant*, 715 F. 2d 1562 (1983), reconsideration en banc stayed, 729 F. 2d 1293 (1984), and *McCleskey* v. *Zant*, 580 F. Supp. 338 (ND Ga.), hearing en banc granted, 729 F. 2d 1293 (1984).