No. 83–6865. VINCENT *v.* LOUISIANA. C. A. 5th Cir. Certiorari denied. 

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

"There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris* v. *Nelson*, 394 U. S. 286, 292 (1969). Because the proceedings in this case have fallen intolerably short of fulfilling this duty, and because this Court must be vigilant in ensuring that lower courts do not improperly cut corners in administering the Great Writ, I respectfully dissent from the Court's denial of certiorari.

I

The petitioner Harold Vincent was convicted in 1974 of armed robbery and second-degree murder by a jury in Vernon Parish, Louisiana. Vincent's trial had been delayed for over two years while he underwent evaluation and treatment for schizophrenia. This mental illness was so severe that psychiatrists at the Louisiana State Penitentiary General Hospital had certified that Vincent did not meet the constitutional standard of triability in that he could neither "realiz[e] the nature of the charges against him" nor properly "assist his attorney." 1 Record 17, 18. After intensive treatment with psychotropic drugs, particularly Thorazine, these psychiatrists notified the trial court that, so long as Vincent remained on his regulated dosage, he would have the mental capacity to proceed with trial. *Id.*, at 18. They emphasized at Vincent's pretrial sanity hearing that Vincent was dependent on Thorazine and that it was "almost a sure thing" that he would revert to episodes of psychosis if he stopped taking the medication. *Id.*, at 64; see also *id.*, at 20–23.

According to Vincent's subsequent habeas petition, which Vincent prepared with the assistance of an inmate paralegal:

"On July 6, 1974, petitioner was transferred from the Louisiana State Penitentiary to Vernon Parish without any of his

medication. Petitioner immediately inquired with Vernon Parish officials about his medication, but no one seemed to know anything about it. Consequently, on the morning trial was scheduled to commence, petitioner intentionally cut his leg to get to the hospital to see someone about receiving some Thorozine *[sic]*. When he appeared in court with his pants leg rolled up and a rag wrapped around his lower leg, petitioner's mother and sisters became upset and rushed to talk with him. After petitioner told them the reason he cut his leg, they talked with petitioner's trial attorneys, William E. Tilley and Chris Smith, III, concerning the likelihood of petitioner receiving some Thorozine *[sic]*. Petitioner's attorneys brought the matter to the attention of the trial court, and after a few preliminary motions were argued, Judge Terrell ordered Vernon Parish officials to bring petitioner to the hospital.

"Petitioner was taken to the Leesville General Hospital where his leg was bandaged and he was given a shot. Petitioner explained his condition to the doctor that treated him, but was informed that it was against hospital regulations to prescribe Thorozine *[sic]* to him. Petitioner was returned to the courthouse for continuation of the proceedings against him. Throughout his trial . . . petitioner was without his prescribed medication, Thorozine *[sic]*. He was convicted as charged and . . . sentenced to a term of life imprisonment." *Id.*, at 9–10.

Vincent claimed that, as a result of this alleged deprivation of Thorazine, he was "mentally incompetent" during the trial in that he was unable "to maintain his ability to consult with his attorney and understand the proceedings against him." *Id.*, at 10.

After Vincent filed his federal habeas petition, the District Court ordered the State to submit a response. Ten months passed before the State, prompted by the court's threat summarily to grant the petition, see *id.*, at 36, finally filed an answer. The State denied Vincent's material allegations and, in the alternative, asserted that "[a]ssuming the facts to be as alleged by the defendant he knew exactly what he was doing in an attempt to get the medication that he desired" and thereby manifested his competence. *Id.*, at 44–45, 57.

Without holding an evidentiary hearing or otherwise inquiring into the merits of Vincent's allegations beyond reviewing the trial

record, the District Court summarily dismissed the petition. *Id.*, at 64–65. The court reasoned that "[t]he alleged lack of Thorazine, the alleged self mutilation, and the alleged trip to the hospital were occurances *[sic]* that were never brought to the trial Judge's attention and are not reflected in the transcript record"; that the medical testimony concerning Vincent's likely relapse in the absence of his medication pertained "to the time of the offense and not at the time of the trial"; and that Vincent's counsel had not raised the issue at trial or on direct review. *Ibid.* "In short, there is nothing in the record, beyond the defendant's assertion, of any lack of medication or the adverse effects from the lack therefrom." *Id.*, at 64. The Court of Appeals for the Fifth Circuit affirmed in a brief unpublished order, reasoning that Vincent's "proof" did not "reach the level required" to secure habeas relief. *Id.*, at 86.

## II

There can be no doubt that, if Vincent was in fact deprived of his Thorazine during trial and this deprivation rendered him incompetent to stand trial, he is entitled to have his conviction vacated. "[T]he conviction of an accused person while he is legally incompetent violates due process," *Pate* v. *Robinson*, 383 U. S. 375, 378 (1966), and a petitioner is not barred from raising this issue by his failure to have challenged his competence at trial, *id.*, at 384.[1] See also *Drope* v. *Missouri*, 420 U. S. 162 (1975); *Dusky* v. *United States*, 362 U. S. 402 (1960); *Bishop* v. *United States*, 350 U. S. 961 (1956). Yet the Court today refuses to disturb the lower courts' summary dismissal of Vincent's petition for failure of proof even though Vincent has never been accorded an opportunity to adduce evidence in support of his allegations. This result is squarely at odds with our precedents, with 28 U. S. C. § 2254, and with the Rules Governing Section 2254 Cases in the United States District Courts.

Where a habeas petition sets forth "specific and detailed factual assertions" that, if true, would entitle the petitioner to relief, the court must ensure the full development of the relevant facts. *Machibroda* v. *United States*, 368 U. S. 487, 496 (1962); see also

---

[1] "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right" to stand trial only while competent. 383 U. S., at 384.

*Harris* v. *Nelson*, 394 U. S., at 300. "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend* v. *Sain*, 372 U. S. 293, 312 (1963). See also 28 U. S. C. § 2254(d). This duty requires "careful consideration and plenary processing of [habeas] claims including full opportunity for presentation of the relevant facts." *Harris* v. *Nelson*, *supra*, at 298. Particular care is of course required where the habeas petitioner, as here, appears *pro se* or through the help of a fellow prisoner rather than with the assistance of an attorney.

Although a well-pleaded habeas petition frequently will require an evidentiary hearing, we have long recognized that federal courts may employ intermediate factfinding procedures in determining whether a full hearing is necessary. See, *e. g.*, *Machibroda* v. *United States*, *supra*, at 495. Thus the Habeas Corpus Rules provide that the court may order limited discovery, 28 U. S. C. § 2254 Rule 6; "direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition," Rule 7(a);[2] or arrange for informal conferences to inquire further into the merits of the petition, Advisory Committee's Note to Habeas Corpus Rule 8, 28 U. S. C., p. 356. See also 28 U. S. C. §§ 2246, 2247. Similarly, the court may direct the petitioner, on pain of dismissal, to specify the witnesses and evidence he relies upon. See, *e. g.*, *Smith* v. *Balkcom*, 660 F. 2d 573, 575, n. 2, 585, n. 33 (CA5 1981), modified, 671 F. 2d 858, mandate recalled, 677 F. 2d 20, cert. denied, 459 U. S. 882 (1982). Although the particular procedures must necessarily vary with the circumstances of each case, the underlying concern is consistent: "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of

---

[2] "The expanded record may include, without limitation, letters predating the filing of the petition in the district court, documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge. Affidavits may be submitted and considered as a part of the record." Rule 7(b).

the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris* v. *Nelson, supra,* at 300.

Vincent's claims have never even been addressed through a state evidentiary hearing, and the duty of the District Court to give full and fair consideration to them was therefore particularly clear. See, *e. g., Townsend* v. *Sain, supra,* at 313–314. None of the justifications proffered by the court or the State can excuse the court's summary dismissal of Vincent's petition. The court asserted, for example, that there is nothing in the transcript record suggesting that Vincent had acted irrationally or had otherwise been incompetent during trial. 1 Record 65. However, we have consistently rejected the notion that the absence of such evidence in the transcript can *alone* obviate the need for an evidentiary hearing on the issue of the petitioner's mental capacity at trial. See, *e. g., Drope* v. *Missouri, supra,* at 179; *Pate* v. *Robinson, supra,* at 386 ("While [petitioner's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue"). Similarly, the court emphasized that Vincent's attorneys had failed to raise the issue of his possible incompetence at trial. 1 Record 64. Again, however, while this failure might well be evidence indicating that Vincent was not incompetent, it could just as well reflect his attorneys' unfamiliarity with the gravity of the situation or the ineffectiveness of their assistance; the ultimate truth cannot be determined in the absence of further inquiry.

The heart of the court's summary rejection of Vincent's petition appears to be that there is "nothing in the trial transcript" proving that Vincent was without his Thorazine during trial, mutilated himself in an attempt to obtain Thorazine, or would have reverted to his former incompetence if in fact he really were deprived of Thorazine. *Ibid.* Yet the alleged incidents occurred before the trial actually began, and the absence of supporting evidence in the transcript therefore obviously does not disprove Vincent's claim. Indeed, one of the fundamental purposes of federal habeas factfinding is to determine the truth of "purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light." *Machibroda* v. *United States, supra,* at 494–495. See also *Hawk* v. *Olson,* 326 U. S. 271, 274 (1945). In the proper exercise of its responsibilities under the Habeas Corpus Rules, the District Court easily could have sought independent verification of

Vincent's allegations from prison and hospital records, and from inquiries directed to Vincent's former attorneys, prison officials, and Vincent's family.[3] Moreover, if the court had doubts about the effect of Thorazine deprivation on Vincent's capacity to stand trial, it should have directed Vincent's doctors to address the issue.[4] These procedures might well have demonstrated that Vincent's petition was without merit. If such discovery revealed substance in Vincent's allegations, however, then an evidentiary hearing would be essential to determine whether his conviction was unconstitutionally procured.

The District Court emphasized that, under pertinent Fifth Circuit precedent, a habeas petitioner alleging that he was incompetent to stand trial must demonstrate facts that "'positively, unequivocally, and clearly generate the real, substantial, and legitimate doubt'" as to his mental capacity to assist in his defense. 1 Record 65, quoting *Bruce* v. *Estelle*, 483 F. 2d 1031, 1043 (CA5 1973). Although this standard may be perfectly appropriate, § 2254 and its attendant Rules forbid the invocation of the standard *before* a petitioner has been given the opportunity to present his supporting evidence.[5] Where, as here, there is undis-

---

[3] As summarized in Vincent's petition for certiorari, "[t]he facts alleged by Vincent that would be corroborated by outside sources include:

"1. Thorazine not being sent with Vincent from Angola. Verification: Prison Records.

"2. Vincent cut his leg to get to hospital to request thorazine. · Verification: Leesville General Hospital records; Police Jury payment records; William E. Tilley, Chris Smith, III, Della Vincent, Brenda Carlin.

"3. Vincent made requests of jail officials, his attorneys and family for thorazine. Verification: Vernon Parish police officers, William E. Tilley, Chris Smith, III., Della Vincent, Brenda Carlin. . . ." Pet. for Cert. 7.

[4] The District Court acknowledged that prison psychiatrists had testified at Vincent's sanity hearing that it was "almost a sure thing" that Vincent would revert to episodes of psychosis if deprived of Thorazine. 1 Record 64. Incredibly, the court dismissed the relevance of this testimony by observing that the psychiatrists' discussion related to Vincent's condition at the time of the offense "and not at the time of the trial." *Ibid.* We have long recognized the probity of prior medical opinion on issues of trial competence, see, *e. g., Drope* v. *Missouri*, 420 U. S. 162, 180 (1975), and the psychiatrists' predictions in this case made further inquiries imperative.

[5] *Bruce* v. *Estelle*, relied on by the District Court below, itself illustrates this principle. After finding that Bruce had demonstrated "a history of men-

puted evidence that a habeas petitioner suffered from longstanding and severe mental illness, had previously been found unfit to stand trial as a result of his disorders, and would "almost [as] a sure thing" suffer a relapse if deprived of his medication, 1 Record 64, a court may not dismiss his claim that he was so deprived without inquiring into the merits or warning him that his petition would be dismissed if further substantiating evidence was not presented.[6] "The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard." *Walker* v. *Johnston*, 312 U. S. 275, 287 (1941).

I dissent.

---

tal illness" and "substantial evidence of mental incompetence at or near the time of trial," the Fifth Circuit concluded that an evidentiary hearing was required to resolve Bruce's claim of incompetence at trial. 483 F. 2d, at 1043. "We would thus be remiss in our duty if we turned a deaf ear to petitioner's contentions since the record in this case evidences proceedings which did not adequately permit him to fairly present his serious allegations." *Ibid.*

[6] The District Court never notified Vincent that his petition was subject to dismissal for want of sufficient evidence. Yet the Habeas Corpus Rules require such fair warning. Rule 11 commands the federal courts to apply the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with these rules." Federal Rule of Civil Procedure 12(c) in turn provides that, if the court considers entering judgment for reasons beyond the bare sufficiency of the pleadings, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." See generally *Stephens* v. *Kemp, ante,* at 1057 (BRENNAN, J., dissenting).